## RINGO, EX'R v. WOODRUFF.

1. STATUTE OF LIMITATIONS : *Mortgages* : *Adverse Possession, what is.*

Seven years continuous adverse possession against the mortgagee will bar his action for the recovery of the mortgaged premises, or for foreclosure of the mortgage; but to constitute adverse possession against a mortgagee it is not sufficient that the mortgagor or those holding under him, occupy, use, improve and pay taxes on the premises, as their own absolute property, but the possession must be in open denial of the mortgagee's title, and accompanied with such acts or declarations of the holders as are sufficient to put the mortagee on notice that they claim and hold in hostility to his rights, and adversely to him. Until then the possession is consistent with his rights and not adverse, and the statute does not begin to run.

2. CHANCERY PRACTICE : *Cross-Relief.*

A defendant can not get cross-relief against a co-defendant upon any statements in his answer to the plaintiff's complaint. He must make his answer a cross-complaint against the co-defendant, and pray relief, and serve process on him, unless he enters his appearance.

3. MORTGAGE : *Junior mortgagee has lien for taxes.*

A junior mortgagee has a lien on the mortgaged premises for money paid for taxes, or to redeem them from forfeiture, and cost, and interest from the time of payment; and is entitled to be reimbursed for these items out of the proceeds of the sale of the premises under the senior mortgage.

APPEAL from *Pulaski* Chancery Court.

Hon. JOHN R. EAKIN, Chancellor.

*S. R. Cockrill,* for appellant.

At common law, in the English and Federal courts and a majority of the States including Arkansas, a mortgage is regarded as a conveyance in fee, the legal title vesting in the

43 469
54 345
43 469
56 492
43 469
57 158
57 527
43 469
60 56
60 168
43 469
63 259
43 469
65 132
65 426
43 469
68 353
68 554
43 469
69 201
43 469
70 54
43 469
73 353
e74 319
75 422
76 409
43 469
81 283
81 302
43 469
f85 211
43 469
f86 205
43 469
89 22

mortgagee while the equity of redemption remains in the mortgagor. In many States, this has been changed by statute or judicial construction until *no title or estate passes to the mortgagee* either at law or equity. 2 *Wash. R. P., p.* 104; 108 *n* 8. Where no title passes the doctrine of adverse possession has no application as to foreclosure of a mortgage. 33 *Iowa,* 303; 18 *Cal.,* 488–9. The cases holding this doctrine are not authority here. Here every limitation affecting the recovery of real estate requires an *adverse possession* to support it. Whether the debt is barred or not is immaterial. There is no propriety in confounding the statute of limitations with the presumption of payments arising from lapse of twenty years. This presumption does not arise from a statutory bar. 8 *Met. (Mass.)* 90; 7 *How. (U. S.)* 258. In those States where the time fixed is twenty years, courts of equity have taken the same as the presumption of right in a mortgagee. But where the statute of limitations is shorter, we know of no case where the courts of equity have reduced the time within which a mortgage may be redeemed to that period. 10 *Yerg. (Tenn)* 380–1. The same rule would govern the mortgagees right to foreclosure.

*Hall v. Denckla,* 28 Ark., and others of the same kind, have been cited to sustain the position that the lapse of seven years without recognition of the mortgage, bars the right to foreclose. But it has been repeatedly held that the possession of a mortgagor, or one standing in that relation, is not hostile or adverse to the right of the mortgagee. 29 *Ark.,* 594; 27 *Id.* 91; 25 *Id.* 274; 16 *Id.* 122; *Hempst.* 527; 27 *Ark.* 63; 34 *Ark.* 312. The effect of a title bond is the same as a sale and mortgage back, and the same rule governs. *Meigs (Tenn.,)* 56; 23 *Wall.* 119; 3 *Fed. Reporter,* 612; *Butler v. Douglas,* 1 *McCrary.* The possession of the mortgagor is consistent with and not adverse to the rights of the mortgagee. 2 *Wash. R. P.,* 158, *et Seq.* 171–2; *Bal-*

Ringo, Ex'r v. Woodruff.

*lentine on Lein*, 360–1; 18 *N. H.*, 247; 30 *Me.*, 333; 23 *Minn.*, 328; 38 *Iowa*, 112; 5 *Cow.*, 174; 14 *Pick (Mass.)* 90; 4 *Heisk. (Tenn.)* 580; 3 *Yerg.*, 513; *Meigs*, 56; 2 *Rand. (Va.)* 93; 1 *McCord (S. C.,)* 395; 5 *B. & Ald.*, 233; 5 *Ad. & Et.*, 291; 1 *Lord Raym.*, 746.

Wherever this doctrine prevails the rule is universal that one who purchases from the mortgagor a part of the mortgaged premises with notice, by record of the mortgage, succeeds only to his rights and stands in no better attitude than he can. *Jones on Mortg., Secs.* 676, 1202, 1211, *and cases cited;* 34 *Ark.*, 312; 16 *Id.*, 122; 29 *Ala.*, 714; 62 *Ill.*, 534–5; 61 *Id.*, 260; 79 *N. C.*, 480; 27 *Penn. St.*, 510; 9 *Wheat.*, 489; *Butler v. Douglas*, 1 *McCrary;* 5 *B. & Ald.*, 604; 4 *M. & W.*, 409; 39 *Eng.*, *C. L.* 100; 9 *Wheat*, 489; 29 *Ark.*, *top of p.* 593; 4 *Heisk. (Tenn,)* 580.

The party owning the equity of redemption *may* throw off his allegiance to the mortgage and set the statute to running in his favor; but he must do some act *hostile* to the mortgagee's right and bring the fact home to his knowledge. 2 *Wash. R. P.*, 171–2; *Angell Lim., Sec.* 451; 4 *How. U. S.*, 294; 27 *Penn. St.*, 510; 62 *Ill.*, 534 *and cases sup.*

In the absence of proof that the possession has become hostile, the seisin of the mortgagee is presumed to continue and be preserved by the permissive occupancy of the owner of the equity of redemption. 18 *N. H.*, 247; 2 *Wash. K. P.* 230, (*493); *Ib.* 127; *Lewis v. Hawkins*, 23 *Wall.* The statute can never be a bar until the mortgagee has been disseized. 8 *Met. (Mass.)* 90. The cases cited all agree that a sale by the mortgagor and exclusive possession by his grantee do not alone work a disseisen. 4 *Kent Com.* *157; 2 *Wash. R. P.*, *501, *Sec.* 9; 2 *Merivalv*, 359.

The record of the deeds from a mortgagor is not notice to the mortgagee, as he holds under a mortgage prior in date to the conveyances. 29 *Ark.*, 595; 6 *Abb. Pr. (N. S.)*

Ringo, Ex'r v. Woodruff.

171; 14 *Peck. Mass.*, 225 ; 3 *Wash. R. P.*, 283. Nor can payment of taxes avail for it is their duty to pay them. *Jones on Mort., Sec.* 1200 ; 62 *Ill.*, 534 ; *Byers v. Danley*, 27 *Ark.*

The mortgagee has the right to suppose that improvements were intended to enhance the value of the equity of redemption, in the absence of other proof. The evidence does not show their character, whether they were such as to put Ringo on his guard.

There is no evidence of a hostile or adverse possession. Woodruff's continued acknowledgment of the mortgage rebuts the presumption of payment. Any acknowledgment, even to a stranger, is sufficient. Twenty years had not elapsed since the purchase of any of the mortgagee's vendees. 28 *Ark.*, 32. Considering the payments made by Woodruff, and the mutual open account current kept between him and Ringo, even the *statutory* period has never been allowed to elapse at any time without recognition of the mortgage by payment on the debt. The fact that Woodruff had conveyed a part of the mortgaged premises when some of the payments were made is immaterial. *Jones on Mortg., Secs.* 1199, 1202; 6 *Abb. Pr. N. S.*, 154; *Hughes v. Edwards*, 9 *Wheaton*; 17 *Kans.*, 14; *Chinnery v. Evans*, 11 *H. of L. cases*, 115.

Appellees purchased from Woodruff with full knowledge from the record, and for aught that we know here, with actual knowledge of the incumbrance, and being apprised, they were bound to ascertain the facts. 54 *Barb.*, 467.

The Federal Courts hold a different rule from our State Courts, and "It would be injurious to the community that different rules should prevail in different courts on the same subject." *Broom Leg. Max.*, *152.

*U. M. Rose* for appellee, Whittington.

The statute began to run in favor of Woodruff and against

foreclosure from the breach of the condition of the mort-
gage by the failure to pay the debt, in other words from the
6th Dec. 1843. 37 *Miss.*, 579 ; 21 *Ark.*, 379 ; *Jones on
Mortg.*, Sec. 1211.

The only question in this case is whether the payments
made by Woodruff on the Ringo mortgage, after he had
conveyed the property to Whittington, could have the effect
of taking the Ringo mortgage out of the statute of limita-
tious as against Whittington. It was expressly decided in
*Mayo, &c., v. Cartwright,* 30 *Ark.,* 407, that part payment
of a mortgage debt would not take the mortgage out of the
statute as against the intermediate vendee. That decision
having stood for six years, and having become a fixed rule
of property in this State should not now be overruled. It
was the necessary result of several previous decisions of this
court. A part payment operates to take a debt out of the
statute of limitations merely on the ground that it is
an acknowledgment that the debt is due. It is merely an
admission of indebtedness, and this court has repeatedly
held that an admission of the vendor after he has conveyed
his property to another cannot operate to the prejudice of
the vendee. 11 *Ark.,* 249 ; 24 *Id.,* 111 ; 6 *Id.,* 109.

The appellant insists that Mayo v. Cartwright should be
reversed, because this court cited N. Y. Life Ins. Co. v.
Covert, 29 Barb., 435, which was reversed on appeal. In
that case the mortgagor continued to make payments at
intervals of about one year, until the foreclosure suit was
instituted, so that the bar never attached. But in this case
as in Mayo v. Cartwright, the bar of the statute became
complete, no payment being made during the long interval
between July 13th, 1855, and Feb'y 9th 1870. When the
statute bar once attached, the rights of Whittington became
fixed and vested and could not be altered by any subsequent
act of Woodruff.

In *Hughes v. Edwards*, 9 *Wheaton*, 489, relied on by appellant, the payment made was before the conveyance to the intermediate vendee. Of course the grantee took the estate burdened with the admissions of his grantor.

*C. B. Moore*, for Adams, adm'r, and the Heirs of George, adopts the brief of U. M. Rose, Esq.

B. B. BATTLE, SPECIAL JUDGE. This is an appeal from a decree of the Pulaski Chancery Court.

Joel Ringo, as executor of the last will and testament of Daniel Ringo, deceased, the plaintiff in the court below, filed his complaint in that court, on the first day of August, 1877, in which he charges that William E. Woodruff, sen., executed to Daniel Ringo, in his life time, on the 20th day of January, 1843, a mortgage upon the following lands in Pulaski county, in this State, to-wit: The south-east quarter of section eleven (11) and the north-west quarter of section thirteen (13) in township one (1) north, and in range twelve (12) west, and upon the following lots and blocks in the city of Little Rock, to-wit: Lot seven (7) in block thirty-six (36) west of the Quapaw line, and lot seven (7) in block ten (10) in Pope's addition to the city of Little Rock, and fractional block one hundred and forty-five (145), to secure the payment of a writing obligatory executed by him, Woodruff, to Daniel Ringo for the sum of two thousand and nine hundred and eighty-five dollars and twenty-five cents, and ten per cent. per annum interest thereon from date until paid, bearing date the 3d day of December, 1842, and due twelve months thereafter. He further charges, that defendant, Woodruff, paid on the writing obligatory as follows:

On January 1st, 1846, $918.47.

On July 13th, 1855, $3123.26.

On February 19th, 1870, $2862.07.

On August 22d, 1876, $150.00.

That the mortgage was filed for record with the Recorder, of Pulaski county, on the 26th day of January, 1843, and was by him recorded. That Daniel Ringo died in the year 1873, testate: and plaintiff, Joel Ringo, is the acting and duly qualified executor of his last will and testament. He concluded the complaint with the usual prayer for foreclosure, and a certified copy of the mortgage and of the certificates of acknowledgment and record thereof was filed with and made a part of the complaint, from which it appears that the mortgage was acknowledged and recorded in the manner prescribed by law.

The defendants, city of Little Rock, John D. Adams, as administrator of Alexander George, deceased, James Brodie and F. Henley, severally answered and admitted the allegations of the complaint to be true, and set up their respective claims to different tracts, blocks and lots described in the mortgage, and the facts on which they, severally, rely to sustain the same ; and in their several answers, state that no payments were made on the writing obligatory aforementioned, after the 13th day of July, 1855, and before the 19th day of January, 1870, and that the payments made thereon, on and after the 19th day of February, 1870, were made without their knowledge or consent; and plead the seven years statute of limitation, in bar and preclusion of plaintiff's right to maintain his action to foreclose his mortgage upon the tract, lot or block respectively claimed by them. None of the deeds on which they severally rely as evidence of title or copies thereof are filed.

The defendants, Louisa Adams and her husband, John Dudley Adams, Frank P. George, Carrie P. George, and Sallie G. George, by leave of the court and with the consent of the plaintiff, adopted the answer of John D. Adams, as administrator as aforesaid, as their own.

Defendant, Henley, in his answer, further states, that at the

time of the execution of the writing obgatory, Woodruff occupied block ten (10) in Woodruff's addition to the city of LittleRock, as a residence, and was and still is the owner thereof; that plaintiff, on the 21st day of June, 1877, recovered a judgment against Woodruff on the aforedescribed writing obligatory in the Pulaski Circuit Court, for the sum of four thousand, nine hundred and ninety-one dollars and forty cents, and on the 14th day of January, 1878, sued out an execution upon this judgment, and caused the same to be levied on block ten in Woodruff's addition, but no sale thereof has been made ; and insists that such levy should be first exhausted before fractional block one hundred and forty-five, claimed by him should be sold to pay the mortgage debt held by plaintiff; and that in the event, the levy should not be exhausted as insisted, he and his co-defendants should be subrogated to the rights of plaintiff under such levy, to the extent of any amount he or they may have to pay in order to protect their property against the foreclosure of plaintiff's mortgage. No copy of the judgment, execution, or return thereon was filed. Adams, as administrator, and Brodie adopted this part of Henley's answer.

Hiram A. Whittington, on his own application, was made defendant, and thereupon filed his answer and cross complaint, making plaintiff, Woodruff, Adams, as administrator, Henley, and James Brodie, defendants to his cross-complaint, and therein states as follows: That on the 9th day of December, 1853, Woodruff executed to him his promissory note, of that date, for five thousand dollars and ten per cent. per annum interest thereon from date until paid, payable on the 9th day of December, 1855, and on the same day mortgaged to him the northwest quarter of section thirteen (13) in township one (1) north, and in range twelve (12) west, fractional block one hundred and forty-five, lot seven in block thirty-six, lot seven in block ten in Pope's addition to

the city of Little Rock, and other lands and lots not described in plaintiff's mortgage, to secure the payment of the note; which mortgage was filed for record on the tenth day of December, 1853, with the recorder of Pulaski county; that various payments were made on the note at different times in the years 1858, 1871-2-3-4-5 and 1876; that on the 23d day of June, 1877, he commenced an action against the defendant, Woodruff and William E. Woodruff, jr., John Kumpe, and Kate B. Ashley, to foreclose his mortgage, and recovered thereon a decree foreclosing his mortgage, under which was sold and conveyed to him, Whittington, the afore described northwest quarter of section thirteen, fractional block one hundred and forty-five, lot seven in block thirty-six, and lot seven in block ten in Pope's addition: that at the time of the sale under the decree, which was on the 26th day of December, 1877, fractional block one hundred and forty-five had been forfeited for the taxes of 1873, 1874 and 1875, and he, Whittington, redeemed the same, on the 9th day of April, 1878, by paying the sum of six hundred and seven dollars and ten cents, the amount of the taxes, penalty and costs due on the same; that the claims of the defendant to his cross complaint to the property purchased by him as before stated, are clouds upon his title thereto and injure the sale thereof; and prays that his title to the same be forever quieted as against the defendants to his cross complaint; and that if the mortgage executed to the plaintiff in the original complaint is a valid security for any sum, that plaintiff be required to exhaust all his other securities before having recourse upon the lands purchased by him, and that in case of any decree adverse to his title to the lands purchased by him, that the taxes, penalty and costs paid by him be declared a lien on fractional block one hundred and forty-five; and that the same be sold to satisfy his lien. And by way of answer to the original complaint, he says that plaintiff's cause of action did not accrue within

seven years next before the commencement of this action; and that plaintiff's action is old and stale, and ought not to be enforced in a court of equity. He filed with his cross complaint and answer, as an exhibit thereto, a certified copy of his deed to the lands purchased at the sale under the decree, and the certificates thereto, from which it appears that the same was properly acknowledged on the 9th day of January, 1878, and approved by the court on the 12th day January, 1878, and was filed for record with the Recorder of Pulaski county, on the 17th day of January, 1878, and was recorded; and also filed and made an exhibit to his cross complaint, a certificate of the Clerk of the County Court of Pulaski county, showing the taxes, penalty, costs and interest due on fractional block one hundred and forty-five on the 22d day of March, 1878, to be six hundred and seven dollars and ten cents, for which is appended to said certificate a receipt of the Treasurer of Pulaski county, bearing date the 9th day of April, 1878.

Defendant, Henley, filed an answer to the cross complaint, in which he adopts his answer to the original complaint, and says: That between the payment which was made on the note on the 1st day of May, 1858, and the next payment thereafter made, which was on the 24th day of May, 1871, more than seven years had elapsed; that in the redemption of fractional block one hundred and forty-five, Whittington was a mere volunteer; that prior to the redemption by Whittington there was pending in the court an action commenced by him, Henley, to test the validity of the taxes of 1873, 1874 and 1875, and it was held and adjudged in that action by this court that a portion of these taxes amounting to one hundred and three dollars and forty-eight cents was illegal and void; that the levy of the taxes of 1873 was void because the assessment for that year was not sworn to, and was not filed until the 17th day of October, 1873, and he was thereby deprived of an appeal to the

county board of equalization for relief from an excessive valuation of block one hundred and forty-five, the same being assessed too high; that the amounts paid by Whittington in redemption as stated, were paid in depreciated scrips of the State, Pulaski county and the city of Little Rock; and sets up and pleads the seven years statute of limitation in bar of Whittington's right to maintain his cross complaint, and says he was barred at the time he undertook to redeem, and had no right to redeem on account of such bar.

The cause appears to have been heard and submitted on the pleadings and exhibits filed therewith, the written statement of Woodruff, and the account therto annexed, and the agreed statement of facts on file herein and hereinafter mentioned.

It was agreed in writing by and between plaintiff and defendants, Adams, as administrator, James Brodie, Henley, Laura Adams, Frank P. George, Carrie P. George, and Sallie G. George, that the statement of William E. Woodruff, sen'r, on file herein, and the account thereto annexed should be received and considered as evidence in the hearing of this action, which statement is to the following effect: The account annexed is correct; that he, Woodruff, does not remember any understanding between Daniel Ringo and himself to the effect that the items of the account should be credited on the writing obligatory, as of their respective dates; but he has no recollection of any indebtedness of himself to Ringo other than that evidenced by the aforementioned writing obligatory, and he would not have paid Ringo's taxes "from 1855 to date of final settlement in 1870" as he did, unless he "had expected that the credits would be so allowed;" that he never disputed the validity of the mortgage to Ringo, but always acknowledged it was valid and binding on him. The account referred to in Woodruff's statement is a statement of the amounts due

Woodruff from Ringo for taxes paid by Woodruff for Ringo at various times in the years 1855–6–7–8–9, 1860–1–2–3–6–7 and 1868, commissions for paying same, and for acceptance of an order of Ringo in favor of Woodruff & Blocher on Woodruff for $101.67, dated the 19th day of February, 1870, amounting in the aggregate to the sum of $2,862.07 ; and is also a statement of an account between Ringo and Woodruff, in which Woodruff is charged with his indebtedness to Ringo, and is credited, as if of different dates in the years 1855–6–7–8–9, 1860–1–2–6–7–8 and 1870, with the taxes paid by him as aforesaid, and said commissions and acceptance, and the balance on said indebtedness due Ringo on the 19th day of February, 1870, was ascertained.

In the agreed statement of facts by plaintiff and the city of Little Rock, filed herein, it is admitted that the city of Little Rock became the purchaser of the southeast quarter of section eleven, in township one north, and in range twelve west, from William E. Woodruff, sen'r, and that the same was conveyed by a warranty deed to the city of Little Rock by Woodruff, on the 31st day of December, 1862, in consideration of the sum of five thousand dollars paid Woodruff by the city of Little Rock ; that the deed was recorded on the 26th day of February, 1863 ; that Woodruff first sold the land to Paul B. Starbuck, on the first day of March, 1850, and executed to Starbuck a bond for title ; that Mary Starbuck, as administratrix of Paul B. Starbuck, deceased, on the 4th day of November, 1862, sold and conveyed the same to the city of Little Rock, by a warranty deed, which was duly recorded ; that the city of Little Rock took possession thereof on the 4th day of November, 1862, and she and her vendees have held actual, continuous, notorious and adverse possession of the same at all times since ; and have converted the same into a cemetery, and it is now used as a public burial ground, where many thousands of dead are buried ; and that such adverse possession was well known to Daniel Ringo in his life time.

In the agreed statement of facts by plaintiff and the defendant, John D. Adams, as administrator of Alexander George, deceased, filed herein, it is admitted that Woodruff, on the 18th of May, 1866, sold and conveyed lot seven in block thirty-six, to Anthony Catharina; that Catharina, on the 25th day of October, 1870, sold and conveyed the same to Alexander George; that Alexander George died in 1871, and John D. Adams is his duly qualified and acting administrator. That Catharina from the time of the conveyance to him and until he conveyed the same, and Alexander George, from the time the same was conveyed to him until he died, and Adams as such administrator, from George's death and at all times since, have been in actual and continuous possession and occupancy thereof, and during all that time have openly controlled the same, and paid taxes thereon "as their absolute property."

In the agreed statement of facts by plaintiff and defendant Brodie, it is admitted that Woodruff, on the 28th day of April, 1862, sold and conveyed lot seven in block ten, in Pope's Addition to Bogart Laughlin; that Bogart Laughlin, on the 24th day of October, 1862, sold and conveyed the same to Benjamin Peyton Brodie; that Benjamin Peyton Brodie died in the year 1863, intestate, leaving Robert Brodie his only heir and distributee at law; that on the 22d day of February, 1871, Robert Brodie sold and conveyed the same to defendant Brodie; that immediately after the conveyance to Laughlin, Laughlin took possession thereof, and he, Laughlin, Benjamin Peyton Brodie, and James Brodie have, severally, each one from the time it was conveyed to or inherited by him until he conveyed the same or died, been in actual and continuous possesion and occupancy thereof since the date of the conveyance from Woodruff to Laughlin to the present time, and during all that time have openly controlled and improved the same and paid taxes thereon as their "own absolute property."

31———43

In the agreed statement of facts by plaintiff, and the defendants, Adams, as administrator, Brodie and Henley, it is admitted that plaintiff recovered a judgment against Woodruff, in the Pulaski Circuit Court, on said writing obligatory in the month of June, 1877, for $4,495, and ten per cent. per annum interest theron from the date of the judgment until paid ; that in the month of January, 1878, plaintiff caused an execution to be issued on said judgment and levied on block ten in Woodruff's addition to the city of Little Rock, and to be held up without sale, and to be returned accordingly ; that this block ten is the homestead of Woodruff; that no part of this judgment has been paid ; and the aforesaid levy still remains in full force and effect.

In the agreed statement of facts by plaintiff and defendant, Henley, it is admitted, that on the first day of October, 1869, Woodruff sold and conveyed fractional block one hundred and forty-five, to Josiah Caldwell, by deed which was duly recorded ; that thereafter this block was listed for taxation in the name of Caldwell, who paid taxes thereon ; that the same was forfeited for the taxes of 1873–4, and 1875, and redeemed as set forth in Whittington's answer and cross-complaint ; that Caldwell caused many soundings and surveys of the Arkansas River to be made in 1870, with the view of building a bridge across the river at this block, which fronted on the river, and Daniel Ringo was informed of Caldwell's intention as to the building of such bridge ; that sometime after this a company was formed for the purpose of building the bridge, and for three months in the year 1872, Caldwell had three men blasting rock on this block with a view of constructing this bridge, which Ringo knew, and that he never intimated to Caldwell or Henley, that he had any claim on this block, and they never knew he had until the commencement of this action.

On the hearing a final decree was rendered by the court

below, in which the cross-complaint as to Adams, as administrator, and James Brodie, and the original complaint as to all the defendants were dismissed, and the title of Whittington to the northwest quarter of of section thirteen was quieted as to all the defendants; and the claims of Whittington to fractional block one hundred and forty-five, except as to a lien thereon for the taxes, penalty, costs and interest paid by him in redemption thereof, was held for naught, and a master was appointed and directed to ascertain and report what taxes were properly levied on fractional block one hundred and forty-five for the years 1873–4, and 1875; and such taxes were declared a lien on same, and defendant Henley was allowed sixty days after the confirmation of the master's report to pay the taxes and interest thereon from the time they were paid by Whittington; and it was ordered, that in default of payment within the sixty days, fractional block one hundred and forty-five should be sold to pay the same and interest thereon; and it was adjudged that each party should recover of plaintiff all his costs, except Whittington, and that he pay all the costs incurred on account and because of his cross-complaint.

Plaintiff filed a motion for reconsideration, which was overruled, and he appealed.

Courts of Equity have never favored stale claims and demands, but on the contrary, from the commencement of their jurisdiction, and before the enactment of any positive statute by any legislative body for the limitation of actions at law, have invariably and decidedly discountenanced laches and neglect. Until Parliament fixed the time in which actions at law should be commenced, they maintained no definite period of limitation, but refused relief to those who slept on their own rights an unreasonable length of time, and in determining what lapse of time was a bar in such cases, were governed by the peculiar circumstances of each case.

But when and as often as Parliament limited the time of actions and remedies to a certain period in legal proceedings, they adopted the same rule and applied it in similar cases in equity. "For," as Lord Camden observed in *Smith v. Clay* (3 Bro., 639, note,) "when the legislature fixed the time at law, it would have been preposterous for equity, (which by its own proper authority always maintained a limitation,) to countenance laches beyond the period that they had been confined to by Parliament. And, therefore, in all cases, when the legal right has been barred by Parliament, the equitable right to the same thing has been concluded by the same bar." "This," says Chancellor Kent in *Kane v. Bloodgood*, 7 *Johns. Ch.*, 112, "has been the uniformly acknowledged doctrine ever since the statute of Jas. I. was enacted. A demand for 200 pounds was held barred by the statute as early as 9 Chas. I. in *Kennedy v. Vanlove*, (1 *Ch. Rep.*, 38,) and again in *Pearson v. Pulley*, (1 *Ch. Cas.*, 102, 20 *Car. II.*) the Lord Keeper said he considered twenty years to be a fit time within which a mortgage was to be redeemable, in imitation of the statutes of limitations in real actions. So early were the statutes of limitation admitted to be the rule of decision in equity as well as law, and though the courts of equity were not within the words of the statute, the time presented by them was adopted by analogy as a fit and just period for a bar in equity of analogous claims."

1. Statute of limitations against mortgages. Guided by the rule that whenever the legislature has limited a period for law proceedings, equity will, in analagous cases, consider equitable rights as barred by the same limitation, the courts of this State, in determining when a suit to foreclose a mortgage on real property is barred, have, invariably, followed the statute of limitations, which fixes the time in which the mortgagee is allowed to bring an action at law for the recovery of the land ; and held that both these actions can be brought in the same period of time. This is well settled by this court, without a single conflicting

Ringo, Ex'r v. Woodruff.

opinion. See *Birnie v. Main*, 29 *Ark.*, 591; *Coldcleugh v. Johnson*, 34 *Ark.*, 312; *Waddell v. Carlock*, 41 *Ark.*, 523; *Harris v. King*, 16 *Ark.*, 122; *Guthrie v. Field*, 21 *Ark.*, 379, *Hall v. Denckla*, 28 *Ark.*, 506. It must then necessarily follow, and there is no escaping the conclusion, that seven years adverse possession is necessary to bar an action like this; for the mortgagee can sue at law, at any time after the right of possession accrues, for the recovery of the land mortgaged until it is barred by seven successive, consecutive years of adverse possession. It is true that the statute, which fixes the time in which these actions shall be brought, expressly provides: "No person or persons, or their heirs, shall have sue or maintain any action or suit, either in law or equity, for any lands, tenements, hereditaments, but within seven years next after his, her, or their right to commence, have or maintain such suit shall have come, fallen or accrued." But the right of action does not accrue until there is an adverse possession, and, in the absence of limitation, ceases when there is no longer any adverse possession; for the rightful owner is deemed to be in possession until he is ousted or disseized, and, in the absence of limitation, is restored to possession when the hostile possession ceases. This is the result of the well settled principle of law, that possession follows title in the absence of any possession adverse to it, and there can be but one actual seizin of the same estate at one and the same time. *Bradley v. West*, 60 *Mo.*, 40; *Pulaski County v. State*, 42 *Ark.*, 118; *Byers v. Danley*, 27 *Ark.*, 77; *Trapnall v. Burton*, 24 *Ark.*, 371; *Ellsworth v. Hale*, 33 *Ark.*, 633; and *Kirk v. Smith*, 9 *Wheaton*, 241.

In speaking of the rules which apply to the statutes of limitation generally, Chief Justice Marshall, in *Kirk v. Smith*, *supra*, said: "One of these, which has been recognized in the courts of England, and in all others where the rules established in those courts have been adopted, is, that

*Adverse possession.*

Ringo, Ex'r v. Woodruff.

possession to give title, must be adversary. The word is not, indeed, to be found in the statutes; but the plainest dictates of common justice require that it should be implied. It would shock that sense of right which must be felt equally by legislators and judges, if a possession which was permissive, and entirely consistent with the title of another, should silently bar that title. Several cases have been decided in this court, in which the principle seems to have been considered as generally acknowledged; and in the state of Pennsylvania, particularly, it has been expressly recognized. To allow a different construction, would be to make the statute of limitations a statute for the encouragement of fraud—a statute to enable one man to steal the title of another by professing to hold under it. No laws admit of such a construction."

It not only follows from the rule for fixing the period of limitation of equitable actions adopted by the Courts of Equity in England and in this country, and followed from the twenty-first year of the reign of James I., down to the present time, and upon principle, that seven years adverse possession is necessary to bar an action to foreclose a mortgage on land, but it has been so expressly held in the latest and best considered opinions of this court upon this question; and these opinions are most unquestionably sustained by the decided weight of authority. *Birnie v. Main, supra; Coldcleugh. v. Johnson, supra; Harris v. King, supra; and the authorities hereinafter cited.*

What is adverse possession against mortgages. Seven years adverse possession is necessary to bar an action for the recovery of land and an action to foreclose a mortgage on real property. What, then, is necessary to constitute that possession? It is well settled by the authorities that this possession must be actual, open, continuous, hostile, exclusive, and be accompanied by an intent to hold adversely and "in derogation of" and not in "conformity

with" the rights of the true owner, or mortgagee, and must continue for the full period prescribed by the statute of limitations. The wisdom and policy of this rule is manifest. It must be actual, either of all or part of the land claimed, as the same may be held with color of title or without ; because constructive possession follows the title, and there cannot be two possessions of the same land at the same time ; and the owner being in possession by virtue of his title, remains until he is disseized or ousted by another entering and holding for himself. It must be open in order to give the owner notice of the adverse claim, and force him to protect his rights, or lose them by a failure to assert them within the period of time allowed him by the statute to do so. It must be continuous, because when it ceases "the seizin of the owner revests and the statute ceases to run ; and any subsequent ouster or disseizin forms the beginning of a new period of limitation and of a new adverse possession. It must be hostile in order to show that it is not held in subordination and subserviency to the title of the owner. It must be exclusive, because the owner's possession continues until he is disseized and there cannot be two actual possessions of the same premises at the same time; and in case the owner and another are in actual occupation of the same land, the legal possession follows the title. It should be accompanied by the adverse intent, because it is necessary to fix "the character of the original entry; and determine whether it be an ouster or a mere trespass, or whether the possession be in subordination or in hostility to the true owner." The possession should be continuous and unbroken during the statutory period so "as to leave no doubt on the mind of the true owner, not only who the adverse claimant was, but that it was his purpose to keep him out of his land." *Angell on Limitations*, (5th Ed.) *Secs.* 386, 390, 392; 3 *Washburn on Real Property*, (4th Ed.) 134, 135 ; 2 *Smith's Leading Cases*, (5th Am. Ed.) 560, 561, 565 ; 2 *Greenleaf on*

*Evidence, Secs.* 430, 557; *Sedgwick & Wait on the Trial of Title to Land, Sec.* 724–753; *Bradstreet v. Huntington,* 5 *Peters,* 440; *Ewing v. Burnett,* 11 *Peters,* 41; *Harris v. King, supra; Mooney v. Coolidge,* 30 *Ark.,* 640; *Blood v. Wood,* 1 *Met. (Mass.,)* 528; *Little v. Downing,* 37 *N. H.,* 367; *Byers v. Danley, supra.*

Was the possession of appellees and their grantors adverse and sufficient to bar this action? To decide this question correctly it is necessary to understand what interest and rights the mortgagee acquired in the mortgaged premises, and the relation the mortgagor and his vendees, and those claiming under them, sustained to him. For, in the absence of evidence of the declarations of the mortgagor, or those claiming under him, showing that he or they held in open hostility to the mortgagee, it will be impossible to ascertain whether or not his or their possession was adverse by reason of its being hostile to or inconsistent with the rights of the mortgagee, unless we know what those rights were. It would be preposterous to say, that the possession of a mortgagor and those claiming under him was adverse to the mortgagee, in the absence of declarations brought home to the mortgagee, showing that he or they were holding in hostility to him, when such possession was consistent and in accord and harmony with all the rights of the mortgagee. No possession which is consistent with the rights of the mortgagee can be adverse to him.

Relative rights of mortgagor and mortgagee.    What, then, are the interest and rights of the mortgagee in lands mortgaged for the payment of debts, and what relation does the mortgagor sustain to him? In equity, as well as at law, the legal estate in the mortgaged premises is in the mortgagee until the debt secured by the mortgage is paid. At law this estate becomes absolute upon the failure of the mortgagor to perform the conditions of the mortgage, while in equity it is at all

Ringo, Ex'r v. Woodruff.

times before foreclosure, subject to redemption. In equity the legal estate is in the mortgagee, and is held by him as a trust estate for the purpose of securing his debt and the payment thereof; and upon the default of the mortgagor in the performance of the conditions of the mortgage he has the right to take possession of the mortgaged premises and apply the rents and profits arising therefrom to the payment of his debt. Until the mortgagee does so, or being entitled to possession under the mortgage demands it, the mortgagor has a right to collect the rents and profits and use the same as his own, without being in any manner held accountable to the mortgagee therefor, and to improve, use, occupy and deal with the mortgaged premises as the owner thereof, and may lease or sell the same. In so doing he does not act adversely to the mortgagee, but acts in the exercise of the dominion over the property vested in him by law and in equity. All these acts are, however, subject to the mortgagee's rights. His possession is in subordination to the rights and interest of the mortgagee. But he may, by his acts or declarations, openly repudiate the mortgage, deny the rights or interest claimed under it, and convert his holding into an adverse possession. Until he does so, his possession is subordinate to the rights and estate of the mortgagee and consistent therewith. *Conard v. The Atlantic Ins. Co.*, 1 *Peters*, 441 ; *Jones on Mortgages, Sec's.* 11, 58, 672, 667, 670, 673, 676, 697, 699, 703, 1152, 1194, *and authorities cited*; 4 *Kent Com.* ( 11*th Ed.* ) 170–172 ; 2 *Story's Eq.* (6*th Ed.*), 1013 *and note* 2, 1015, 1017 ; *Angell on Limitations, Sec.* 449.

Was the occupancy of the mortgagor, Woodruff, consistent with or adverse to, the rights and interest of the mortgagee ? Upon the answer of this question, it seems difficult to entertain a serious doubt. He never disclaimed or disavowed the title of the mortgagee, but

on the contrary, he states, he never disputed the validity of the mortgage, but, with the view of paying the mortgage debt, made payments to, and advanced money and paid taxes for, the mortgagee, from time to time, and at intervals, between none of which was there a seven years lapse.   Between the maturing of the mortgage debt and first payment and the last payment and the commencement of this action less than seven years intervened. The evidence clearly shows that his possession was not adverse to, but entirely consistent with the rights and interest of the mortgagee.

But appellees insist, that there was an interval between the thirteenth day of July, 1855, and the nineteenth day of February, 1870, in which Woodruff made no payments on the mortgage debt, and that, therefore, plaintiff should not maintain this action against them.   But this is not sustained by the evidence, which shows, that in this interval Woodruff advanced moneys and paid taxes for Ringo with the expectation of receiving, and under a tacit agreement that he should receive, credit therefor on the mortgage, which Ringo afterwards gave him.   There was nothing in this interval to show that Woodruff held adversely to Ringo, but on the contrary the evidence establishes the reverse.

Appellant is not barred from maintaining his action against Woodruff.   Do those claiming under Woodruff stand in a better position than he did at the time he conveyed to them ?   The mortgage executed by Woodruff to Ringo having been filed for record and recorded, became a notice to all subsequent purchasers and mortgagees, of its execution, existence and contents.   With this notice the grantees of Woodruff purchased portions of the mortgaged property and acquired the interest he held therein and took his title subject to the mortgage.

They acquired no rights and interest other than he had. They simply took the place of Woodruff, and are bound by his previous recognition of the mortgage as a subsisting incumbrance on the property purchased by them. Taking the place of Woodruff as to the property purchased, their possession thereof was, as Woodruff's, subordinate to the rights and interest of the mortgagee, and remained so until they, by their acts or declarations, made it adverse; and it is persumed that it remained subordinate until such time as the evidence clearly shows it was rendered inconsistent with the rights of the mortgagee, by such declarations or acts as were sufficient to put the mortgagee on notice that they were claiming and holding in hostility to his rights and adversely to him.    *Coldcleugh v. Johnson, Supra; Jones on Mortgages, Sec.* 1202; *Medley v. Elliot,* 62 *Ill.,* 532; *Thayer v. Cramer,* 1 *McCord (S. C.) Ch.* 395; *Mitchell v. Bogan,* 11 *Rich. Eq.,* (*S. C.*) 686, 706; *Wright v. Eaves,* 5 *Rich. Eq.,* 81; *Hughes v. Edwards,* 9 *Wheaton* 489; *Martin v. Jackson,* 27 *Pa. St.,* 504; 2 *Zeller's Lessee v. Eckert,* 4 *How.* 289; 3 *Washburne on Real Property,* (*4th Ed.*) 158; *Smith v. Hosmer,* 7 *N. H.* 436; *Smith v. Burtis,* 6 *Johns.* 218; *Jackson v. Sharp,* 9 *Johns.* 163; *Pierson v. Turner,* 2 *Ind.,* 123; *Alexander v. Polk,* 39 *Miss.,* 755; *and the authorities on adverse possession hereinafter cited.*

Several of the appellees say, in their respective answers, that they and their grantors held possession of the tract, lot or block respectively claimed by them, for more than seven years next before the commencement of this action, and during that time no payment was made by them, or either of them, on the writing obligatory described in plaintiffs complaint, or with their knowledge or consent. They insist that such possession was adverse and that appellant is barred from maintaining his action as to the

property claimed by them, by reason thereof. Are they correct?

In *Mayo & Jones v. Cartwright*, 30 *Ark.*, 407, cited and relied upon by appelles, the facts are these: One George Washington, being the owner and occupant of a certain tract of land, conveyed the same, on the eighth day of April, 1856, by deed of trust, to Mayo, to secure the payment of certain notes he owed one Loftus. The deed of trust contained a power of sale; was acknowledged and recorded on the tenth day of April, 1856; and the trust was accepted by Mayo. Washington still remained in possession until some time in December, 1857, when he sold and delivered possession of the land to Cartwright, who since then remained in possession, and used, cultivated and improved it. In October, in 1868, Mayo undertook to sell the land under the power of sale contained in the deed of trust, and Cartwright brought suit to enjoin the sale. In the opinion in that case the pleadings are not set out in full, but it seems that the main ground for relief set up in the complaint was the uninterrupted adverse possession for more than seven years, which was set up by Cartwright as a bar to the sale of the land by the trustee under the trust deed; and that "defendants, in their answer, admitted the purchase and possession of the land by the complainant, but denied that their right to enforce the trust was barred by limitation, upon the ground that the statute bar was suspended during the late war, and that deducting that time, seven years had not elapsed between the time the *adverse possession commenced* and the time when the trustee attempted to enforce his trust;" and that several payments had been made by Washington upon the notes secured by the deed of trust, up to, and as late as the year 1862. This court held that the statutes of limitation was not suspended by the war in that case, and that the payments made by Washington after he

sold the land did not arrest the statute as to Cartwright. It did not undertake to say, in that case, what is necessary to constitute adverse possession. The effect of the failure of Cartwright to make payments on the debts secured by the deed of trust, while he remained in possession of the land, upon his possession was not even considered. The only questions of limitation decided in the case were: Did the war suspend the statute of limitations, and if not, did the payments made by Washington *arrest* the statute of limitation as to Cartwright? There was no occasion for the court to pass upon any others; as it appears that the defendants in that case admitted the possession of Cartwright to be adverse.

But the question in this case is not, was the statute of limitation arrested by the payments made by Woodruff, but is, was the possession of appellees and their grantors adverse? Unless it was at some time adverse, the statute never commenced running and there was nothing for the payments to arrest. In this case the grantees of Woodruff acquired such title, estate and possession as he had. He could convey or deliver no other. That possession was consistent with the rights of the mortgagee and subordinate to his interest, and remained so until it was rendered inconsistent by such acts or declarations as were sufficient to put Ringo on notice that it was held in hostility and adversely to his rights. The failure of appellees or their grantors to make payments could not make their possession adverse, unless it was their duty or they were under obligations to pay. Such failure was not inconsistent with the rights of the mortgagee. For if they had not assumed the mortgage debt, (and there being no evidence that they did, it is not presumed they did) they were under no obligations to pay it; and they had a right to remain in possession of

the property purchased by them, without paying the mortgage debt, or any part of it, and in so doing did nothing in hostility to the mortgagee's rights, but acted in the exercise of a right acquired by their purchases, which was perfectly consistent and in accord with those of the mortgagee. Such conduct being consistent with the rights of Ringo, and his executor, could not make the possession of appellees, or their grantors adverse. See authorities before cited, and *Jones on Mortgages, Sec's.* 738, 748; *Johnson v. Monell,* 13 *Iowa,* 300; *and Hull v. Alexander,* 26 *Iowa,* 569.

The agreed statement of facts by plaintiff and the defendant, City of Little Rock, shows that the City of Little Rock held actual, continuous, notorious and adverse possession of the South East quarter of section eleven (11) in township one (1) North and in range twelve (12, West, under a deed of conveyance thereof, executed to her by Woodruff for more than seven years next before the commencement of this action, with the knowledge of Daniel Ringo, in his lifetime, and the plaintiff is thereby barred from maintaining his action to foreclose his mortgage upon this tract of land. Appellant concedes this much in his brief.

Adverse posession. The agreed statement of facts by plaintiff and John D. Adams, as administrator of Alexander George, deceased, and by plaintiff and James Brodie, show that possession of the lots, respectively, claimed by Adams, as administrator, and Brodie, was held by them and those through whom they respectively claim from Woodruff, for more than seven successive years next before the commencement of this suit. But was this possession sufficient to constitute a bar under the statute of limitations? It is admitted that they openly controlled these lots, and paid taxes thereon, as their absolute property. But it is also

admitted that they claim and derived their respective titles to these lots from Woodruff, through grantors, to whom Woodruff sold and conveyed after plaintiff's mortgage was executed and recorded. There is no evidence that Daniel Ringo, or his executor, at any time, demanded possession of these lots, or refused to permit Adams, as administrator, or James Brodie, or any one of those under whom they respectively claim, to hold possession thereof. Under this state of facts they, and those under whom they claim, had the right to use, occupy, improve and control these lots as their own property, and could have done so without infringing upon or violating any right of Ringo, or his executor. Such possession being consistent with the rights of the mortgagee is presumed to have been held in subordination to his title, unless the evidence clearly proves that it was adverse and hostile to the owner of the mortgage. No secret intent to hold adversely would have been sufficient to convert such possession for any length of time into a bar under the statute of limitations; but it must have been held for seven years in open denial of the title of the mortgagee and his legal representative, and in such manner and accompanied with such acts or declarations as was sufficient to put Ringo, or his executor, on notice that it was held adversely and in hostility to his rights and interest. The fact that Adams, as administrator, and James Brodie, and those under whom they claim, respectively held possession of, controlled and paid taxes on, the lots severally claimed by them, as their absolute property, is not sufficient to prove that their possession was adverse to plaintiff, or his testator, or that they controlled and dealt with them in a manner inconsistent with the rights of Ringo, and his executor, under the mortgage. They might have done so and not have given the slightest indication that they held in hostility to the rights and interest

of plaintiff or his testator. According to the evidence adduced in the court below plaintiff is not barred from maintaining his action to foreclose the mortgage upon these two lots.

The agreed statement of facts by plaintiff and Henly does not show that Henly and Caldwell, or either of them, held adverse possession of fractional block one hundred and forty-five for seven years next before the commencement of this suit, even if the possession of each of them be united. The facts relied on to show adverse possession were all within seven years next before the commencement of this action and the filing of Henly's answer, and it follows there is nothing to bar plaintiff's action as to fractional block one hundred and forty-five.

There is no proof that plaintiff's action is barred by any act of Whittington, or that Whittington's mortgage, second in time and order of filing, has acquired precedence over plaintiff's.

2. CHAN-CERYPRAC-TICE: No cross-relief without cross complaint.   Several of the defendants insist, in their respective answers, that the levy on block ten, in Woodruff's addition, to satisfy the execution issued on the judgment recovered by plaintsff against Woodruff should be first exhausted before the sale of any part of the property described in plaintiff's mortgage; and that, in the event plaintiff's mortgage should be held a valid and subsisting lien on the tracts, lots and blocks respectively claimed by them, and the enforcement thereof is not barred by the statute of limitations, such tracts, lots and blocks should be sold in the inverse order of the alienation thereof by Woodruff, until such liens shall be satisfied, and that so much thereof as shall then be unsold should be discharged of the lien; and that if plaintiff is not required to exhaust the aforesaid levy before selling any part of the mortgaged premises, and any part of the mortgaged

property should be sold to satisfy the lien held by the plaintiff under his mortgage, those of them claiming the the tract, lot or block so sold should be subrogated to the rights acquired by plaintiff under such levy. But neither of them made his answer a cross-complaint. Failing to do this, there was lacking the pleading which was necessary to authorize the court below to grant them such relief. For in asking this relief they seek to go beyond the inquiry proposed by the [complaint, and ask for relief against co defendants which is dependent on facts of which no statement is made in plaintiff's complaint and are not involved in the determination of the relief plaintiff is entitled to, or in the determination of the questions presented by the allegations of his complaint, and are not responsive to the allegations of the complaint, and cannot be set up in opposition to the relief prayed for by plaintiff. To obtain this relief insisted on by defendants, as stated, it was necessary for them to have stated the facts upon which they demanded it, and asked for it, in an answer made a cross-complaint against the co-defendants against whom the relief was sought. It was not sufficient to state the facts and ask for the relief in the answer, but the answer should have been made a cross-complaint against the co–defendants who would have been affected by the relief if it had been granted. "Parties defendant are as necessary to" cross-complaints "as to original" complaints, "and their appearance in both cases is enforced by process in the same manner," unless there is a formal appearance entered on the record or answer filed. An answer in the nature of a cross-complaint, "which makes nobody defendant, which prays for no process, and under which no process is issued" as in this case "is a nullity." Unless he be made a party defendant in the answer in the nature of a cross-com-

32———43

plaint in the manner indicated, the co-defendant is not required to answer the allegations constituting the grounds of relief asked for against him; and as corollary to this it follows, no proof is required to disprove the allegations on which this relief is asked. *Gantt's Digest, Sec.* 4550 ; *Mars v. Lewis,* 31 *Ark.,* 204; *Garner v. Beaty,* 7 *J. J. Marsh,* 229 ; *Rogers v. McMacham,* 4 *J. J. Marsh,* 37 ; *Washington Railroad v. Bradley,* 10 *Wall.,* 299.

Then, again, there is no evidence on which this relief against the co-defendants could be granted. The interests of the defendants in the subject matter of the action are separate and distinct; and the admissions contained in the several agreed statements of facts upon which the action was heard and submitted cannot affect any one except those who respectively made them. 1 *Greenleaf on evidence, sec.* 174.

The sale under which Whittington claims did and does not affect plaintiff and the defendants in this action who were not parties to the suit in which it was made. None of the parties to this action who were not parties to the suit instituted by Whittington, are bound or affected by the decree or any proceeding therein.

Whittington, having acquired an interest in fractional block one hundred and forty-five by the mortgage executed to him by Woodruff, and claiming to be the purchaser and owner thereof under the decree foreclosing his mortgage, and having redeemed the same from a forfeiture on account of the non-payment of taxes, which were a paramount lien thereon, in order to protect the interest he claimed therein, is entitled by subrogation to reimbursement out of the block itself for the taxes, penalty, costs and interest legally chargeable against the same, which he paid in the redemption thereof. Having benefited all parties interested by relieving them from

the payment of such taxes, penalty, costs and interest in an effort to protect the interest he claimed, the plainest equity demands he should have a lien therefor by subrogation. *Blodgett v. Hitt*, 29 *Wis.*, 169; *Levy v. Martin*, 48 *Wis.*, 198; *Copehart v. Mhoon*, 5 *Jones' Eq.* (*N. C.*), 178; *Gilbert v. Gilbert*, 39 *Iowa*, 657; *Whitaker v. Wright*, 35 *Ark.*, 515; *Johnson v. Payne*, 11 *Neb.*, 269.

It is therefore the opinion of this court, that appellant is entitled to a foreclosure of his mortgage upon lot seven in block thirty-six, lot seven in block ten in Pope's addition, fractional block one hundred and forty-five, and the North West quarter of section thirteen, in township one North and in range twelve West, by sale, and to the payment of his debt out of the proceeds arising from such foreclosure so far as the same will extend; that Whittington is entitled to a lien on fractional block one hundred and forty-five for such taxes, penalty, costs and interest paid by him as was properly and legally chargeable against the same, and legal interest on the amount so paid from the date of the payment thereof, and to the enforcement of such lien, and to be first paid such taxes, penalty, costs and interest out of the proceeds of any sale of fractional block one hundred and forty-five which may be made in this cause; and that the complaint was properly dismissed as to the City of Little Rock.

There being no appeal taken by any of the defendants from the decree of the court below, and no complaint on their part as to such decree, the same will be permitted to remain in force as to them, except wherein it affects appellant and is inconsistent with this opinion. The decree of the court below so far as it is inconsistent with this opinion is therefore reversed, and this cause is remanded with instructions to that court to enter a decree herein in accordance with this opinion, and to cause the

same to be executed according to the statutes and equity practice in force in this State, and to adjust the costs incurred in the court below in such manner as to the Chancellor, in the exercise of his discretion, may seem equitable.

S. F.CLARK, S. J.   In regard to that part of the mortgaged property claimed by the defendant Brodie, to-wit: Lot number seven in block number ten in Pope's addition to Little Rock, I differ from the majority of the court for the reasons which follow :

It is agreed that the possession of Brodie and those under whom he claims was sufficient as to length of time (seven years) to bar the action of the mortgagees.  But it is held that his and their possession were not sufficiently adverse to the mortgagee's title to entitle him to the benefit of the statute of limitations, and that the statute did not commence running in behalf of that possession.

The answer of Brodie alleges that Woodruff, the mortgagor, on the 28th day of April A. D., 1862, sold this lot to S. B. Laughlin for the sum of $700 cash paid, and conveyed it to him ; that on the 24th of October in the same year Laughlin sold and conveyed it to Benjamin Peyton Brodie, a minor, for the sum of eight hundred dollars cash paid ; that Benjamin P. Brodie dying without heirs of his body, the property descended to his father Robert Brodie, who for the consideration of $2,000 cash, conveyed it to the defendant James Brodie on the 22d of February A. D. 1871:

And the agreed statement of facts expressly admits that these parties have, ever since the purchase by Laughlin on the 28th of April, 1869, held actual and continuous possession and occupancy of said lot, and

during all that time have openly controlled and improved the same and paid taxes thereon as *his and their own absolute property.*

In the case of *Coldcleugh v. Johnson's Adm'r*, 34 *Ark.*, 312, it was held by this court that while the statute does not run in behalf of the mortgagor who simply remain in possession, yet it is competent for him at any time to make his possession adverse and set the statute running in his behalf by some open and notorious act inconsistent with the mortgagee's title. There is no decision of this court, nor is it indicated in the opinion of the majority in this case, what kind of a public or notorious act is required to set the statute running in behalf of the mortgagor or his vendeee.

If selling the whole property—not the equity of redemption merely—to a stranger, by a mortgagor, after forfeiture, and putting the purchaser into actual possession as his own absolute property is not such a public and notorious act as will convert a friendly possession into an adverse one, then it is in my opinion useless to speculate as to what will be such notorious act, and there is and can be practically no such thing in the law, as a plea of the statute of limitations to an action to foreclose a mortgage.

The very essence of an adverse possession is a possession in one's own right—holding, improving, paying taxes on the property as his own absolute property. An admission of such a possession excludes every idea of a holding as tenant to any one or in subordination to any title whatever except his own.

In the case of the city of Little Rock, defendant in this case, the majority of the court have allowed the benefit of the statute under precisely the same state of circumstances, except that in the case of the city it is admitted

in the agreed statement of facts that Ringo, the mortgagee, in his lifetime knew of the adverse possession while it is silent as as to his knowledge in the case of Brodie.

In my opinion this is a distinction without a difference.

Actual possession is always notice to all parties interested in the lands. This is the general rule. There is no question here as to color of title. It is admitted that these parties were in the actual possession as their own absolute property. This admission is made by the plaintiff—the mortgagee, which, if actual knowledge of such possession were material, would, it seems to me, be an admission of such knowledge. But there is no reason why a mortgagee, who is a conditional owner, should not be required to take notice of parties in actual possession, and the character of such possession, any more than there is why an absolute owner should not.

The general rule where no statute on the subject prevails, is, as derived from English jurisprudence, that the possession of the mortgagee or his vendee is not adverse to the title of the mortgagor whether before or after forfeiture; that such parties hold as tenants at will to the mortgagee, and the mortgage may be foreclosed at any time short of the time when it would by law be presumed to be paid, which was twenty years. This legal presumption was derived from a statute of 21st James I, chapter 10, section——, which took away the right of entry of all parties who had been out of possession for twenty years. 2 *Hilliard on Mortgages, page* 5. This general rule has been changed or modified in most of the States of the Union, and the different wording of such statutes and the different constructions given to them by the courts, has involved the whole subject in interminable confusion. But our statute (Gantt's Digest adopted in 1851, and extended to all cases in equity as well as

at law) is historically known to have been adopted for the express purpose of settling and quieting titles to land. Its express object was to vest title in any one who should hold possession in his own right, and as his own absolute property for the term of seven years against all the world—as well against the mortgagor as any absolute owner; and in my opinion no proper construction can make any decision of this court hold otherwise until the case of *Colcleugh v. Johnson's Adm'r* 34 *Ark.*, 312. In that case this court for the first time held that the statute would not run in behalf of a mortgagor in possession as against the mortgagee's right to foreclose, but held that the mortgagor might make his possession adverse by some open and notorious act inconsistent with the mortgagee's title, and which should give notice to the mortgagee. See the cases of *Sullivan v. Hadley*, 16 *Ark.*. 129 ; *Guthrie v. Field*, 21 *Ark.*, 379 ; *McGehee v. Black_well*, 28 *Ark.*, 27 ; *Bernie v. Maine*, 29 *Ark.*, 591 ; *Mayo & Wright v. Cartwright*, 30 *Ark.*, 407.

In the case of *Bernie v. Maine,* this court decided that the statute would not run so as to bar a foreclosure by the mortgagee where the mortgaged property was not in possession of the mortgagor or his vendee but was vacant. It decided nothing further.

Whatever may have been the previous decisions, however, the rule adopted in the case of *Colcleugh v. Johnson's Adm'r*, is now the law on the subject. But if such a rule be adopted as to what constitutes an adverse and hostile possession in fact as cannot, or as in the ordinary business transactions of life, never does exist, then the court practically holds that there is no limitation by statute as between the mortgagor or his vendees, and the mortgagee's right to foreclose in this State.

In my opinion such a ruling is unfortunate because it

practically operates to revive mortgage liens which have been dormant for years, and will cast a cloud upon the validity of titles to real estate in many cases where those titles have been supposed to be settled and at rest.

Before the Hons. W. W. SMITH, Judge, and B. B. BATTLE and S. F. CLARK, Special Judges. Hons. S. R. COCKRILL, C. J., and J. R. EAKIN, Judge, not sitting.